IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-2914-WJM-KMT

STEVEN LINDGREN, and
DANI L. LINDGREN,

    Plaintiffs,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

---

In this insurance action, Plaintiffs Steven Lindgren and Dani L. Lindgren (jointly, "Plaintiffs") sue Defendant Safeco Insurance Company of America ("Defendant") for breach of their insurance policy, unreasonable delay and/or denial of insurance benefits, and common law bad faith, following an August 6, 2018 hail storm.  (ECF No. 5.)

Before the Court are Defendant's Motion for Summary Judgment ("Motion for Summary Judgment") (ECF No. 32) and Defendant's Motion for Partial Judgment on the Pleadings ("Motion for Judgment on the Pleadings") (ECF No. 24).  For the reasons stated below, the Motion for Summary Judgment is granted, and the Motion for Judgment on the Pleadings is denied as moot.

## I. BACKGROUND[1]

Defendant issued to Plaintiffs insurance policy number OY7334045, effective April 30, 2018 through April 30, 2019 (the "Policy"), which insured Plaintiffs' home located at 4725 Broadlake View, Colorado Springs, Colorado 80906 (the "Property"). (ECF No. 32 at 2–3 ¶¶ 1–2; ECF No. 32-1.)  The Policy contains an appraisal provision, which provides:

> **7. Appraisal.**  If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost*, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand.  The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located.  The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire.  An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.
>
> Each party will:

---

[1] The following factual summary is based on the parties' briefs on Motion for Summary Judgment, and documents submitted in support thereof.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

The Court notes that Plaintiffs inexplicably chose not to respond to Defendant's Statement of Material Facts in the manner set forth in WJM Revised Practice Standard III.F.4. (*See generally* ECF No. 33.)  The Court could deem those facts admitted but will nonetheless rely on the documentary evidence provided by the parties in support of the Motion for Summary Judgment.  *See Cox v. Zavislan*, 2014 WL 5477794, at *4 (D. Colo. Oct. 23, 2014) ("[T]he Court cannot overlook Plaintiff's failure to admit or deny the facts contained in Defendants' statement of undisputed facts.  Rather, those facts are deemed admitted, and the Court must enter summary judgment in Defendants' favor if it is appropriate under the facts and authorities before the Court.").

2

      a.    pay its own appraiser; and

      b.    bear the other expenses of the appraisal and umpire equally.

(ECF No. 32-1 at 3 (emphasis in original).)[2]

After a hail storm caused damage to the Property on August 6, 2018, Plaintiffs filed an insurance claim. (ECF No. 32 at 3 ¶ 3.) A field adjuster inspected the Property on behalf of Defendant on August 21, 2018. (*Id.* ¶ 4.) Thereafter, Defendant initially estimated the value of Plaintiffs' insurance claim as $31,223.89, which included $4,132.48 to repair Plaintiffs' roof. (*Id.* ¶¶ 6–7; ECF No. 32-3 at 1, 3.) After subtracting applicable deductions, Defendant issued an initial payment of $8,915.82 to Plaintiffs. (ECF No. 32 at 3 ¶ 8; ECF No. 32-3 at 4.)

On August 22, 2018, Steven Lindgren contested Defendant's initial estimate and thereafter provided Defendant with copies of invoices demonstrating that his patio furniture cost $41,393.90. (ECF No. 32 at 3 ¶¶ 9–12; ECF No. 32-3 at 7.) After reviewing the invoices, Defendant revised the initial estimate of the value of Plaintiffs' insurance claim to $66,965.45 and issued a supplemental payment of $24,827.98 to Plaintiffs on September 11, 2018. (ECF No. 32 at 4 ¶ 13; ECF No. 32-3 at 14–15.)

---

[2] Plaintiffs' Exhibit 15 appears to be an excerpt from the Policy and contains additional language under the Appraisal section: "In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim." (ECF No. 33-15.) Because Plaintiffs attach only one page of the Policy, the Court cannot conclude whether this additional language was operative at the time of the August 6, 2018 hail storm. At any rate, the Court concludes that this additional language does not materially affect the Court's analysis of the claims at issue in the Motion for Summary Judgment because Defendant neither contests causation nor whether the August 6, 2018 hail storm was covered under the Policy.

On January 29, 2019, Plaintiffs' retained public adjuster, Jerad Watson, e-mailed Defendant a copy of a revised supplemental estimate that estimated the cost of replacing Plaintiffs' roof at $180,746.  (ECF No. 32 at 4 ¶¶ 14, 17–18; ECF No. 32-4.)  Based on the difference in scope between this estimate and Defendant's original estimate, Defendant requested a re-inspection of the Property.  (ECF No. 32 at 4 ¶ 19.)  On February 6, 2019, Defendant's independent adjuster, Paul Borah, re-inspected the Property and provided a revised estimate for Plaintiffs' insurance claim, which included a repair of the roof.  (ECF No. 32 at 4 ¶ 20; ECF No. 32-3 at 22–24.)

On February 11, 2019, Plaintiffs opted to exercise the appraisal provision of the Policy.  (ECF No. 32 at 4 ¶ 21; ECF No. 32-5 at 3.)  The parties selected their respective appraisers; on July 19, 2019, the umpire, Laura Haber, issued an appraisal award that determined Plaintiffs' claim had a total replacement cost value of $160,119.98 and an actual cost value of $125,401.08, including $14,150.40 to repair Plaintiffs' roof.  (ECF No. 32 at 5 ¶¶ 24–25; ECF No. 32-6 at 1.)  Defendant thereafter issued payment of $75,352.13—the unpaid portion of the appraisal award—on September 10, 2019.  (ECF No. 32 at 5 ¶ 27; ECF No. 32-3 at 25.)

Plaintiffs initiated this action in the District Court for El Paso County, Colorado on August 6, 2020, and Defendant removed this action to federal court on September 5, 2020.  (ECF No. 1.)  Plaintiffs assert the following claims: (1) breach of contract (¶¶ 18–22)[3]; (2) common law bad faith (¶¶ 23–28); and (3) unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116 (¶¶ 29–33).

---

[3] Citations to (¶ __), without more, are references to the Complaint.  (ECF No. 5.)

4

On April 26, 2021, Defendant filed the Motion for Judgment on the Pleadings. (ECF No. 24.) Plaintiffs responded on May 17, 2021 (ECF No. 28), and Defendant replied on June 1, 2021 (ECF No. 31).

On July 26, 2021, Defendant filed the Motion for Summary Judgment. (ECF No. 32.) Plaintiffs responded on August 16, 2021 (ECF No. 33), and Defendant replied on August 30, 2021 (ECF No. 35).

This matter is set for a 3-day jury trial beginning on July 11, 2022 in Courtroom A801 and a Final Trial Preparation Conference on June 24, 2022. (ECF No. 40.)

## II. MOTION FOR SUMMARY JUDGMENT

**A.    Standard of Review**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

**B.      Analysis**

  1.     Breach of Contract Claim

Defendant argues that the Plaintiffs' breach of contract claim fails as a matter of law because the appraisal proceeding determined the amount of loss and Defendant has not breached any provision of the Policy.  (ECF No. 32 at 10.)  Specifically, Defendant argues that because appraisal awards are binding as to matters within their scope, Plaintiffs are now bound by the amount of loss established through the appraisal process, and Plaintiffs should not be allowed to relitigate the binding appraisal award.  (*Id.* at 10–11.)

Plaintiffs respond that "[e]ven if Defendant is correct that [the] appraisal award is a binding determination of the amount of loss, this case presents an exception to the general rule because the appraisal award in this case requires a further analysis of coverage and legal issues."  (ECF No. 33 at 6.)  Plaintiffs further argue that they "have presented ample evidence raising numerous issues of material fact as to whether Defendant acted unreasonably in delaying payment of benefits to Plaintiffs."  (*Id.*)  According to Plaintiffs, Defendant initially underestimated the damage to Plaintiffs' property, which forced Plaintiffs to incur additional costs, including a public adjuster and counsel.  (*Id.* at 7–8.)

Moreover, Plaintiffs point out that the appraisal process did not resolve for more than a year after the storm and that "[i]t was only at this point that Defendant agreed to pay a significantly greater amount – although still not the full amount owed under the Policy."  (*Id.* at 8.)  They argue that they "have always maintained they were entitled to have their Property brought back to pre-loss condition" and that because these benefits

6

remain unpaid, "there is still an actionable breach of contract claim and coverage issues that fall outside of the scope of appraisal." (*Id.* at 10.)

The Policy's appraisal provision states that, "[a]n award in writing, so itemized . . . when filed with the company shall determine the amount of loss." (ECF No. 32-1 at 3.) The Supreme Court of Colorado has held that appraisal awards can be binding on the parties as to the amount of loss. For example, in *Wagner v. Phoenix Insurance Company*, the Supreme Court of Colorado agreed with the insurer that an appraisal provision "amounted to an option offered to plaintiffs, and plaintiffs, having chosen to exercise that option, are *precluded from any suit* upon the policy and are bound by the award . . . ." 348 P.2d 150, 152 (Colo. 1960) (emphasis added). When a party demands appraisal of the amount of loss, that party "irrevocably exercise[s] [its] option to determine that question as provided by the appraisal clause of the policy." *Id.* "In other words, the party is 'estopped by the appraisal award.'" *Concept Restaurants, Inc. v. Travelers Indem. Co.*, 2016 WL 8737773, at *2 (D. Colo. Dec. 2, 2016) (quoting *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 2012 WL 181413, at *2 (5th Cir. Jan. 24, 2012)); *see also Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1154 (D. Colo. 2015) (finding that an appraisal results in a "binding factual determination" as to the amount of loss); *Tae Hyung Lim v. Am. Econ. Ins. Co.*, 2014 WL 1464400, at *3 (D. Colo. Apr. 14, 2014) ("Neither party is permitted to dispute the amount of loss once it has been determined.").

Here, Plaintiffs have failed to present any evidence which would establish a genuine issue of material fact regarding its breach of contract claim against Defendant. Plaintiffs made a claim. Defendant inspected the Property, obtained estimates on the amount of damage, and made an initial payment to Plaintiffs, which it revised upon

7

receiving additional evidence regarding Plaintiffs' loss.  (ECF No. 32 ¶¶ 8, 13, 19; ECF No. 32-3 at 4, 14–15, 22–24.)  When Plaintiffs still disputed the amount paid, they invoked the appraisal process to have independent appraisers determine the amount of covered loss.  (ECF No. 32 at 4 ¶ 21; ECF No. 32-5 at 3.)  Upon the conclusion of the appraisal process—which conclusively set the amount of loss—Defendant paid the difference between the appraisal award and its initial payments.[4]  (ECF No. 32 at 5 ¶ 26; ECF No. 32-3 at 25.)  Defendant has thus fully complied with the terms of the Policy, and Plaintiffs have presented no evidence to the contrary.  *Cf. Hometown Cmty. Ass'n, Inc. v. Philadelphia Indem. Ins. Co.*, 2017 WL 6335656, at *4 (D. Colo. Dec. 12, 2017) (recognizing that although plaintiff "may have disagreed with [insurer's] scope of repairs or its initial actual cash value amount, such a disagreement is contemplated in the insurance policy, and the appraisal process exists to address just such disagreements," and that the insurer honored its contractual obligations by honoring the appraisal process).

Notably, although Plaintiffs argue they are entitled to additional benefits under the Policy, they do not cite to any provision of the Policy that Defendant has purportedly breached.[5]  (*See generally* ECF No. 33 at 7–10.)  Plaintiffs offer only conclusory

---

[4] The Court notes that even if the appraisal provision of the Policy permitted Defendant the right to deny the claim for reasons not related to the amount of the appraisal, Defendant did not do so.

[5] To the extent that Plaintiffs' breach of contract claim is effectively an assertion that Defendant breached an implied duty of good faith and fair dealing by failing to timely pay Policy benefits to Plaintiffs, the breach of contract claim still does not survive summary judgment.  After all, "[w]ithout a showing that an express or implied contractual term has allegedly been breached, [Plaintiffs'] contract claim is, fundamentally, a tort claim in a contractual wrapper." *Larson v. One Beacon Ins. Co.*, 2013 WL 5366401, at *10 (D. Colo. Sept. 25, 2013) (recognizing that in Colorado, an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action based in tort because of the "special nature of the insurance contract and the relationship which exists between the insurer and the insured" (citing *Goodson*

arguments that they were owed additional benefits under the Policy; however, "the argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment."[6]  *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) (citing *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1198 n.6 (10th Cir. 2008) (stating that, "[t]o avoid summary judgment, a party must produce specific facts showing that there remains a genuine issue for trial" and that "mere conjecture" is insufficient)); *Mitchell*, 218 F.3d at 1199 (holding summary judgment is appropriate when an opposition is "limited to conclusory statements and [is] void of cites to the specific portions" of the record containing relevant evidence).

Because the appraisal proceeding determined the amount of loss, and Plaintiffs have failed to provide evidence demonstrating that Defendant breached any terms of the Policy, the Court grants summary judgment in favor of Defendant as to the breach of contract claim.

   2.   <u>Statutory and Common Law Bad Faith Claims</u>

An insurer breaches its statutory duty under Colorado Revised Statutes § 10-3-1115 if there "was no reasonable basis to delay or deny the claim for benefits." *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 974 (Colo. App. 2011); Colo. Rev. Stat. § 10-3-1115(2) (stating "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a

---

*v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (en banc))).

   [6] Likewise, although Plaintiffs contend that a purportedly "obvious difference" in the replacement tiles "would likely violate a local ordinance since Plaintiffs' [Homeowner's Association] files their declarations on the insured's deed," Plaintiffs neither provide evidence of the local ordinance, nor articulate how this local ordinance violation may have resulted in a breach of the Policy by Defendant.  *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the

reasonable basis for that action"). Likewise, to establish a common law bad faith claim under Colorado law, an insured must establish "proof of unreasonable conduct and knowledge that the conduct is unreasonable or a reckless disregard of the fact that the conduct is unreasonable." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo. 1985) (en banc). The reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards. *Goodson*, 89 P.3d at 415 (recognizing that expert testimony is often required to establish objective evidence of industry standards).

Defendant contends that Plaintiffs cannot establish that it acted unreasonably because it failed to establish any evidence of industry standards. (ECF No. 32 at 17.)

In response, Plaintiffs contend:

> [t]he unreasonableness of Defendant's investigation rests in the numerous errors and omissions made throughout the process. Defendant initially undervalued Plaintiffs' patio furniture by approximately $40,000. Defendant's initial adjuster left out damages to several very expensive windows around the entire Property. Defendant's initial adjuster's estimate did not include photographs of the roof or damage to the roof. Defendant would only agree to pay additional damages when Plaintiffs would force the issue. Plaintiffs had to inform the Defendant about the patio furniture. Plaintiffs had to notify Defendant about the omitted window damages on the estimate. Plaintiffs had to hire a public adjuster. Plaintiffs had to get an independent estimate from a local contractor regarding the roof damage to get another re-inspection (which Defendant raised its estimate). Plaintiffs had to invoke appraisal. Plaintiffs had to notify Defendant about the unavailability of tiles, the obvious mismatch issues, and the HOA/ordinance restrictions. Plaintiffs had to retain counsel and file suit.

(ECF No. 33 at 11–12 (internal citations omitted).)

---

plaintiff's] arguments for him.").

Here, there is no doubt that the appraisal award is evidence of Plaintiffs' loss; however, the fact that the ultimate appraisal award was significantly higher than Defendant's initial offer, without more, does not demonstrate that Defendant's conduct was unreasonable.  After all, the determination of the reasonableness of Defendant's actions requires application of an objective standard, *i.e.*, what a reasonable insurer would have done under the same or similar circumstances.  Plaintiffs offer no evidence as to what the insurance industry standards or practices were, or how Defendant deviated from them.

Based on Plaintiffs' failure to come forward with any evidence demonstrating that Defendant breached any terms of the Policy, or that a reasonable insurer would have initially offered a higher payment or otherwise settled the insurance claim under these circumstances, the Court finds that Plaintiffs have failed to establish a genuine issue of material fact regarding the reasonableness of Defendant's actions.  *Cf. Wak Inc. v. Ohio Sec. Ins. Co.*, 2019 WL 859709, at *3 (D. Colo. Feb. 22, 2019) (finding mere difference between insurer's estimate and ultimate appraisal award is insufficient to demonstrate that insurer's conduct was unreasonable); *Johnson v. Am. Nat'l Prop. & Cas. Cos.*, 2019 WL 463026, at * 5 (D. Colo. Feb. 6, 2019) (dismissing statutory and common law bad faith claims predicated on the insurer unreasonably delaying or denying benefits after plaintiffs failed to demonstrate that they were owed benefits under their insurance policy).

As such, the Court grants summary judgment in favor of Defendant as to the statutory and common law bad faith claims.

### III.  MOTION FOR JUDGMENT ON THE PLEADINGS

In light of the Court's decision to grant summary judgment in favor of Defendant, the Court denies as moot the Motion for Judgment on the Pleadings.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 32) is GRANTED;

2. Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 24) is DENIED AS MOOT;

3. The Clerk shall enter judgment in favor of Defendant Safeco Insurance Company of America and against Plaintiffs Steven Lindgren and Dani L. Lindgren and shall terminate this case; and

4. Defendant shall have its costs, if any, upon compliance with D.C.COLO.LCivR 54.1.

Dated this 16th day of December, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge